UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PAMELA SMITH,

                Plaintiff,

    -vs-                                  **DECISION AND ORDER**

                                        04-CV-6469

JO ANNE B. BARNHART,
Commissioner of Social Security,

                Defendant.

_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final

determination of the Commissioner of Social Security ("the Commissioner") that Pamela J. Smith

("plaintiff") is not disabled under the Social Security Act ("the Act") and, therefore, is not entitled

to either Social Security Disability Insurance ("SSDI") benefits or Supplemental Security Income

("SSI"). The parties have filed cross-motions for judgment on the pleadings pursuant to FED. R. CIV.

P. 12(c). (Dkts. #3, #5).

For the reasons discussed below, plaintiff's motion is granted, in part, the Commissioner's

motion is denied, and the case is remanded for further administrative proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff applied for SSDI and SSI on September 13, 2002, alleging disability as of March

15, 2001 due to, *inter alia*, a learning disability and bipolar disorder. (T. 33-36, 49).[1] At the time

---

[1] "T.__" refers to the page of the administrative transcript filed by the Commissioner.

of her application, plaintiff was 23 years old. (T. 34). She completed high school through a special education program at the Batavia Board of Cooperative Educational Services ("BOCES"), and she received an Associate's Degree from Genesee Community College. (T. 55, 56). Plaintiff made a number of work attempts between 1995 and 2002, as a cashier, an ice cream server, and as an assistant teacher at BOCES. (T. 37-40, 75-81).

The administrative transcript documents plaintiff's lengthy psychiatric history beginning with an evaluation on October 29, 1993, one day before her 15th birthday. (T. 242). At that time, she complained of insomnia, nightmares, auditory hallucinations, and daily mood swings. (T. 242). Plaintiff's 1993 diagnoses included bipolar disorder and borderline personality disorder. Between 1993 and 1999, plaintiff received psychiatric treatment at Bry Lin Hospital, Strong Memorial Hospital, Hillside Children's Center, Harriet Boulevard Center, Monroe Avenue Group Home, and Genesee County Mental Health. (T. 239). During that time she was also incarcerated as a person in need of supervision. (T. 240). In 1999, plaintiff's mother brought her to United Memorial Medical Center due to "bizarre" behavior. She was subsequently evaluated by the Genesee County Community Mental Health Services and was diagnosed with a mood disorder, conduct disorder, and borderline personality disorder with histrionic traits. (T. 238–41).

Plaintiff subsequently experienced multiple episodes of decompensation that resulted in further mental health treatment. For instance, in April 2001, plaintiff was brought to United Memorial Medical Center emergency department three times in 24 hours because her family reported that she was agitated, combative, threatening harm to herself and others, and was "speaking nonsense." (T. 147-83). On May 10, 2001, during a manic episode, plaintiff absconded with her cousin's 20-month-old baby. During the resulting 15-day incarceration, plaintiff was medicated with lithium. (T. 117). Shortly thereafter, on June 1, 2001, plaintiff's friends called police to report she

2

was dancing in the street while wearing only shorts and a bra, after which she put on a wedding dress and leather vest to announce her marriage engagement. (T. 112). Plaintiff was placed under mental hygiene arrest and hospitalized at Strong Memorial Hospital for two weeks. (T. 109, 112). She was discharged with a prescription for Lithobid and Risperdal, and instructed to follow up with Genesee Mental Health Center. (T. 109).

Plaintiff received treatment from the Genesee County Mental Health Clinic between June and October 2001. Evaluators concluded that plaintiff suffered from bipolar I disorder (most recent episode manic), childhood sexual abuse, alcohol abuse, a borderline personality disorder with histrionic traits, a Global Assessment of Functioning ("GAF") between 35 to 50, and likely suffered from a conduct disorder.  In a Treatment Plan dated August 23, 2001, Amy Baldwin, a certified social worker, wrote that plaintiff had "[c]hronic mental illness with limited insight," but that she was "intelligent" and "verbal." (T. 249).  Plaintiff's contact with Genesee County Mental Health ended when she relocated to Wyoming County in October 2001. (T. 121).

In September 2002, plaintiff sought treatment with the Wyoming County Mental Health Clinic. (T. 278-280).  Plaintiff complained of an increase in her manic symptoms, which resulted in the loss of her last job. (T. 278-279).  She denied any current drug or alcohol abuse. (T. 280). She was diagnosed with bipolar I disorder, most recent episode manic, and was referred for medical and psychiatric evaluations. (T. 280).  Plaintiff continued to receive treatment for her bipolar disorder from Wyoming County Mental Health Clinic through at least April 2004 under the care of treating psychiatrist Dr. Shabbir Chowdhury, and her therapist, Richard A. Reif, C.S.W.-R. (T. 263-83). During this time period, the signs and symptoms of plaintiff's mental impairments fluctuated.  At times, medication seemed to improve the severity of her bipolar symptoms.

In April 2004, Mr. Reif wrote that plaintiff's "primary mental illness is Bipolar I Disorder. Manic episodes characterize her symptoms when she decompensates.  She also has annual cycles which include periods when she is more prone to decompensation.  Alcohol and/or drug abuse may have been a part of her remote past picture, but they have not been a concern since we have seen her (and probably were not a part of the picture for some time before our first contact)." (T. 263).

Plaintiff applied for disability benefits after her manic symptoms increased. (T. 117, 278). Upon initial review, her application was denied on December 26, 2002. (T. 27). She appealed and a hearing was held on April 21, 2004 before Administrative Law  Judge Richard Zach, ("ALJ"), at which plaintiff appeared with counsel and testified. (T. 331-349). A vocational expert ("VE") also testified. (T. 349-354).

On June 14, 2004, the ALJ issued a decision finding that plaintiff was not disabled because she could perform a number of jobs existing in significant numbers in the national economy, including laundry laborer, industrial cleaner, and housekeeper. (T. 18). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 10, 2004. (T. 4). This action followed.

## DISCUSSION

### I.  Standard for Determining Disability

Under the Social Security Act ("the Act"), a person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A physical or mental impairment (or combination of impairments) is disabling if

it is of such severity that a person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation.[2] *Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). Once a claimant has proven steps one through four, the burden then shifts to the Commissioner to show that the person "'retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy.'" *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)).

## II.  Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d

---

[2]The Second Circuit has described the five-step process as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999).

Cir.1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997)). Still, "it is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada*, 167 F.3d at 773. This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court is to first review the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998).

### III.  The ALJ's Decision

In this case, the ALJ found at step one that plaintiff's seasonal, part-time work did not qualify as substantial gainful activity. (T. 19).  The ALJ found at steps two and three that plaintiff had a severe impairment, but that it did not meet or equal any listed impairment. (T. 16).  The ALJ found at step four that plaintiff did not have the residual functional capacity ("RFC") to "perform her past relevant work because she had to deal directly with people, and had constant interaction with her co-workers and supervisors." (T. 18).  Based on testimony from the VE, the ALJ concluded at step five that plaintiff was not disabled because she could perform other jobs found in significant numbers within the national economy.

### IV.  Remand is Required

The Commissioner argues that substantial evidence in the record exists to support the ALJ's decision that plaintiff is able to perform other work in the national economy.  Plaintiff, on the other hand, argues that the ALJ's decision is based upon legal error. Plaintiff claims, *inter alia*, that the ALJ erred at step three in not finding plaintiff disabled under Listing 12.05 for Mental Retardation, substituted his own opinion for valid medical opinion, failed to properly determine plaintiff's "RFC", and erred in assessing evidence of drug addition and alcoholism.

I agree, in part, with plaintiff.  The ALJ applied incorrect legal standards and failed to fully developed the record.  Therefore, this case is remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

#### A. Listing 12.05 – Mental Retardation

At step three, the ALJ found that plaintiff's severe impairment did not meet or equal Listing 12.05 for mental retardation.[3]  Plaintiff takes issue with the fact that the ALJ declined to find that

---

[3]According to Listing 12.05, "[m]ental retardation refers to significantly subaverage general intellectual functioning  with deficits in adaptive functioning initially manifested during the

plaintiff had "[a] valid verbal, performance, or full scale IQ of 60 through 70," a necessary element under Listing 12.05(C). 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C).[4]

Plaintiff points to the fact that the Commissioner's consulting psychologist, Dr. John Thomassen, administered the Wechsler Intelligence Scale test on plaintiff on October 21, 2002.  He found that plaintiff had a verbal IQ score of 82, a performance IQ score of 69, and a full scale IQ score of 74.   (T. 233).   The performance score of 69 is significant because, under the Commissioner's regulations, "where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(6)(c).

The ALJ acknowledged that plaintiff received a score of 69, but then declined to accept that score.  Instead, citing Dr. Thomassen's report, he reasoned that "the range of true scores lies between 64 and 78."  The ALJ then reasoned that "[s]ince the claimant was able to successfully obtain an Associates Degree in Human Resources with some minimal accommodation, the undersigned feels that the '78' is more reasonably representative of her [performance] IQ. She does not meet or equal Section 12.05."[5] (T. 16).

---

developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05.

[4]Listing 12.05(C) has three elements. First, there is a threshold requirement that the evidence either demonstrates or supports onset of the impairment before the age of 22.  Second, the Listing requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 . . . ." Third, there must be "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C).

[5]In this part of his decision, the ALJ made two errors. First, he misidentified the score of 69 as plaintiff's "verbal" score, when it was her "performance" score.  Second, plaintiff's Associates

The Commissioner argues that an ALJ is not bound by IQ scores when determining disability. In certain instances, that may be true. For example, in cases where the ALJ is faced with contradictory test results, it is his responsibility to assign weight to the opinions of the testing professionals in accordance with the law and the Commissioner's regulations. *See Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir.1995) (where the Appeals Council was presented with evidence of the results of a second IQ test that indicated the plaintiff's full scale IQ was within the 12.05(C) range, it still relied on an earlier test because it was more consistent with the record). IQ test results also may be disregarded if they are incredible or inconsistent with other medical evidence. *Popp v. Heckler*, 779 F.2d 1497, 1500 (11th Cir.1986) (where multiple doctors found that plaintiff had a tendency to exaggerate physical and mental symptoms, including his ability to remember, and where the plaintiff seemed to have no real difficulty during testing, the ALJ was not bound to the results of the IQ test).

Here, however, the ALJ did not choose one IQ score over another, as in *Mackey*. Nor did the ALJ identify any reason to question the validity of the IQ score Dr. Thomassen reported, as in *Popp*. Dr. Thomassen wrote that plaintiff put forth "good effort" during testing, and there are no other IQ test results to contradict his findings. In fact, the record is devoid of any other medical evidence that conflicts with a performance IQ of 69. *See Rivera v. Apfel*, No. 98 CV 0619, 2000 WL 1568596 (W.D.N.Y. Sept. 29, 2000) ("where, as here, such scores are not inconsistent with the  record and

---

Degree is in "Human Services" not in "Human Resources." (T. 56, 334).  It is unclear whether these were simply transcription errors, or whether the ALJ misunderstood the factual record.  These errors could have affected the hypothetical questions posed to the VE.  On remand, the same errors should not be repeated.

are facially valid, neither the ALJ nor [the District Court] may substitute his opinion in lieu of competent medical opinion.").

Instead, the ALJ opined that an IQ score within the outer range of scores identified by Dr. Thomassen was more "reasonable," and he substituted it for the specific score identified by Dr. Thomassen.  That was error.  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) (an ALJ may not substitute his own opinion for that of competent medical opinion).

I find under these circumstances that the ALJ improperly substituted his own opinion for competent medical opinion by rejecting the score of 69 for the reasons stated in his decision. *See Vasquez-Ortiz v. Apfel*, 48 F.Supp.2d 250, 257 (W.D.N.Y.1999). Dr. Thomassen acknowledged plaintiff's educational background in the narrative of his Intellectual Evaluation, and he still reported a performance IQ of 69, not 78. Simply pointing to the fact that plaintiff has an Associates Degree is not substantial evidence on which to disregard a valid IQ score.  That is particularly true in this case because plaintiff testified at the hearing that she received special tutoring and counseling services in college. She also testified that she had zero credit classes because her ACT scores were below average, and that her husband wrote papers for her so that she would get passing grades. (T. 347). Further, plaintiff has never utilized her Associates Degree in any employment setting.

The Commissioner has failed to cite to any authority to support what the ALJ did in this case. Moreover, although the Commissioner argues on appeal that the review psychiatrist did not find that plaintiff met any listed impairment, he did not give a medical opinion about *Listing 12.05.*  Thus, there is no medical opinion in the record to support the ALJ's determination in this regard.

The case, therefore, is remanded for further development of the record on this issue.  The ALJ needs to reevaluate whether plaintiff meets the requirements under Listing 12.05(C).[6]

## B.  Medical Equivalence

I also find that the ALJ erred at step three by failing to discuss whether plaintiff had mental impairments that medically equaled a listed impairment.  The Commissioner's non-examining psychiatrist, Dr. Madan Mohan, opined that plaintiff did not meet the exact requirements for several mental impairment Listings, including an organic mental disorder under Listing 12.02, an affective disorder under Listing 12.04, a personality disorder under Listing 12.08, and a substance abuse disorder under Listing 12.09.  Dr. Mohan found, however, that plaintiff had medically determinable mental impairments, including bipolar disorder and a history of a personality disorder, but that they did not "precisely satisfy the diagnostic criteria" of any of the Listings. (T. 208, 210, 214-15).

20 C.F.R. § 404.1526(a) provides that an impairment "is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment."  Pursuant to § 404.1526(b) there are a number of ways in which the Commissioner may find medical equivalence, despite the fact that plaintiff may not meet the *exact criteria* of any

---

[6]As part of his analysis, the ALJ should also address whether the evidence demonstrates or supports onset before the age of 22, something not done in his first decision.  Plaintiff's IQ was tested when she was 23 years old.  "[I]nasmuch as mental retardation is considered to be a lifelong condition, 'an IQ score is presumed to accurately reflect an individual's IQ throughout that person's entire life, regardless of the individual's age when the IQ test is administered.'" *Rivera*, 2000 WL 1568596, at *3 (quoting *Holmes v. Apfel*, No. 98 C 5087, 1999 WL 731769 (N.D. Ill. Aug. 31, 1999)).

particular Listing.[7]  Social Security Ruling 96-6p further provides that where "the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable," the ALJ is required to retain the services of a medical expert to give an opinion on medical equivalence.

Despite Dr. Mohan's findings and the well-documented history of plaintiff's mental health diagnoses by several health care professionals, the ALJ did not explicitly address whether plaintiff's mental impairments medically equaled one or more listed impairments.  I find that it was legal error

_____

[7]20 C.F.R. § 404.1526(b) provides:

(b) How do we determine medical equivalence? We can find medical equivalence in three ways.

(1)(i) If you have an impairment that is described in appendix 1, but —

(A) You do not exhibit one or more of the findings specified in the particular listing, or

(B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

(ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

(2) If you have an impairment(s) that is not described in appendix 1, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

(3) If you have a combination of impairments, no one of which meets a listing (see §404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

for the ALJ not to conduct this analysis.  The record shows that plaintiff's mental impairments do not necessarily fall within any one category of listed impairments.  Nevertheless, there is substantial evidence in the record, including the opinion of the Commissioner's own psychiatrist, that plaintiff suffers from a combination of mental impairments that do not meet all the criteria of four different Listings.  Under these circumstances, a "judgment of equivalence may be reasonable." Soc. Sec. Ruling 96-6p (1996).

On remand, the ALJ should develop the record on the issue of medical equivalence, including retaining the services of a medical expert as required by Social Security Ruling 96-6p, and analyze whether plaintiff's mental impairments medically equal one or more listed impairments. *See, e.g., Brown v. Apfel*, 174 F.3d 59, 64-65 (2d Cir.1999); *see also Schulte v. Apfel*, No. 98-CV-422E, 2000 WL 362025, at *16 (W.D.N.Y. Mar. 31, 2000) (ALJ's decision finding plaintiff not disabled was reversed where the ALJ failed to address whether the combination of plaintiff's mental impairments was the equivalent to a Listing).

## C.  Residual Functional Capacity

Remand is also required because the ALJ's RFC determination is not supported by substantial evidence and is based on legal error.

In determining plaintiff's RFC, the ALJ stated that he found the opinions of the Commissioner's review psychiatrist, Dr. Mohan, persuasive.  In accordance with 20 C.F.R. § 404.1520a, Dr. Mohan completed a mental RFC assessment and Psychiatric Review Technique concerning plaintiff's mental impairments. (T. 207-26).  Dr. Mohan concluded that plaintiff had mild restrictions in her activities of daily living, marked difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation of extended duration.  (T. 217).

The ALJ's RFC assessment mirrored Dr. Mohan's opinion, but with one important exception. The ALJ found that plaintiff had only *moderate* difficulties in maintaining social functioning, not *marked* difficulties, as found by Dr. Mohan.  The ALJ did not provide sufficient reasoning for why he rejected this single aspect of Dr. Mohan's opinion.[8]  This was error.  Under the Commissioner's own rules, if the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  Soc. Sec. Ruling 96-8p (1996).

This is particularly relevant here because Dr. Mohan's opinion concerning plaintiff's social functioning is consistent with the record as a whole, including November 20, 2003 medical assessment prepared by plaintiff's treating psychiatrist, Dr. Shabbir Chowdhury.  Dr. Chowdhury opined that plaintiff's mood instability resulted in a "poor" or "no" ability to make personal-social adjustments. (T. 227A).  Dr. Mohan's opinion is also consistent with the assessment of Dr. Thomassen, who stated that plaintiff had no friends and was likely to have problems relating with coworkers and coping with stress. (T. 200). The ALJ rejected Dr. Chowdhury's opinion, and he failed to state how much weight he gave to the opinion of Dr. Thomassen.  In addition, based on the above, it is unclear what weight the ALJ actually assigned to Dr. Mohan's opinion.

More importantly, however, the ALJ did not cite to any medical evidence in the record to support his conclusion that plaintiff had only *moderate*, and not *marked*, limitations in social functioning.  *See* Soc. Sec. Ruling 96-8p ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts… and

---

[8]To the extent that the ALJ discounted Dr. Mohan's opinion because it "included consideration of substance abuse" (T. 18), this was error.  As discussed *infra* at IV.D., the ALJ misapplied the Commissioner's regulations regarding how to evaluate substance abuse.

nonmedical evidence…."). In fact, the record does not contain any contradictory evidence on which to support a finding that plaintiff had only moderate limitations in social functioning.

These errors were not harmless, as they demonstrably impacted the opinion of the VE regarding plaintiff's ability to perform work in the national economy. At the hearing, the VE testified that with the RFC found by the ALJ, which included only a *moderate* difficulty in social functioning, plaintiff could perform other work in the national economy. If, however, plaintiff had the RFC found by Dr. Mohan, including a *marked* difficulty maintaining social functioning, the VE testified that there was no work in the national economy that plaintiff could perform. (T. 353-54). Thus, the distinction is extremely important.

On remand, the ALJ should explain any discrepencies between the opinion of Dr. Mohan and the ALJ's RFC assessment. In addition, the ALJ's decision should point to evidence supporting his RFC finding.

### D. Findings of Drug Addiction and Alcoholism

The Court notes an additional error that should not be repeated upon remand. There is conflicting evidence in this case regarding plaintiff's past drug and alcohol abuse. Although the record contains references to plaintiff's past abuse of drugs and alcohol, there is also evidence of negative test results for drugs and alcohol taken during periods of her mental decompensation. Furthermore, a recent progress note and letter from plaintiff's therapist, Richard Reif, state that plaintiff is not a drug or alcohol abuser. (T. 263-64). Further, Dr. Mohan wrote that, "Since [claimant] still continuing to abuse alcohol, [drug addiction and alcoholism is] *material*." (T. 223). Importantly, though, Dr. Mohan gave that opinion in 2002 without the benefit of any of the two years of medical records from Wyoming County Mental Health Clinic.

15

The ALJ used this notation by Dr. Mohan as further evidence that plaintiff is not entitled to benefits. It was error to make a finding of drug addiction and alcoholism without following the necessary legal analysis set forth under the Act and the regulations.

Pursuant to 42 U.S.C. § 423(d)(2)(C), a person found to be disabled after employment of the five-step disability evaluation will not be considered disabled within the meaning of the Act "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." The regulations provide that the "key factor" in this analysis is whether the Commissioner would still find a person disabled if she stopped using drugs and alcohol. 20 C.F.R. § 404.1535(b)(1). In this regard, the Commissioner must evaluate whether the plaintiff is still using drugs or alcohol, then identify which of plaintiff's current physical and mental limitations would remain if she stopped using drugs and alcohol, and then determine whether those remaining limitations would be disabling. § 404.1535(b)(2). If her remaining limitations would still be disabling, then drug addiction or alcoholism will not be a contributing factor material to the determination of disability and she will be eligible for benefits. Plaintiff bears the burden of proving that her alcoholism is not a contributing factor material to the disability determination. *See Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003); *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001); *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Ostrowski v. Barnhart*, No. 01-CV-2321, 2003 WL 22439585, *3 (D. Conn. Oct. 10, 2003).

Here, the ALJ relied on Dr. Mohan's conclusory notation regarding plaintiff's alcohol abuse as an alternative basis to find that she was not disabled at step five. The ALJ did not perform the analysis required by the Comissioner's regulations. This is error. The ALJ may not disregard the effects of alcohol or drug abuse during the five-step disability evaluation in lieu of performing the

16

analysis detailed above. *See Frederick v. Barnhart*, 317 F.Supp.2d 286, 293 (W.D.N.Y.2004) (it was error for the ALJ to determine that plaintiff's alcoholism was material to her disability without employing the necessary analysis set forth in the regulations).

Thus, if the ALJ finds that plaintiff is disabled, he should reconsider the record regarding plaintiff's alcohol and drug abuse, and then make the necessary findings regarding whether it is a contributing factor material to her disability.[9]

## CONCLUSION

Plaintiff's motion (Dkt. #3) is granted, in part, the Commissioner's motion (Dkt. #5) is denied, and the case is remanded for further administrative proceedings consistent with this Decision and Order, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DAVID G. LARIMER
U.S. District Judge

Dated:          Rochester, New York
                November 22, 2006

_____

[9]In light of the fact that the Commissioner's decision is reversed, the remaining issues raised by the parties do not need to be addressed in this decision. Notably, the issues regarding whether the VE's testimony constituted substantial evidence to support a step-five determination are now moot, as the ALJ will have to reevaluate the RFC finding and will pose new hypothetical questions to the VE at a new hearing.